1
2
3
4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7   SALIH A. IBRAHIM,                        Case No. 15-cv-00336-PSG

8                  Plaintiff,                **ORDER GRANTING MOTION TO
                                             DISMISS SECOND AMENDED**
9        v.                                  **COMPLAINT**

10  DEFENSE LANGUAGE INSTITUTE               **(Re:  Docket No. 30)**
    FOREIGN LANGUAGE CENTER, et al.,
11
                   Defendants.
12

13          Plaintiff Salih Ibrahim, an employee of the Department of the Army's Defense Language

14  Institute in Monterey, alleges that DLI unfairly denied him medical leave, retaliated against him

15  for whistleblowing activity and discriminated against him on account of his race and national

16  origin.[1]  Defendant John M. McHugh, in his capacity as Secretary of the Department of the Army,

17  moves to dismiss Ibrahim's Second Amended Complaint.[2]  The court GRANTS the Secretary's

18  motion, but with limited leave to amend.

19                                      **I.**

20          Ibrahim, an American citizen of Sudanese descent, first started at DLI as an assistant

21  professor in 2008.[3]  On April 24, 2012, he requested six weeks of leave—or 240 hours—to fly to

22  Sudan and care for his father, who was suffering from a serious heart condition.[4]  Although he

23  _____

24  [1] *See* Docket No. 29 at ¶¶ 4-5, 8-100.

25  [2] *See* Docket No. 30.

26  [3] *See* Docket No. 29 at ¶ 4.

27  [4] *See id.* at ¶ 8.

28                                      1
    Case No. 15-cv-00336-PSG
    ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

already had accrued 169 hours of paid leave, his supervisor, Badria Mohamed, and the school

dean, Hiam Kanbar, granted him only 80 hours of paid leave in addition to 112 hours of unpaid

leave.[5]  Ibrahim consulted the Civilian Personnel Advisory Center, which administers personnel

policies for civilian employees at DLI, and CPAC confirmed that he was entitled to use 148 hours

of paid leave under the Family and Medical Leave Act of 1993.[6]  On CPAC's advice, Ibrahim

flew to Sudan on May 9 and submitted the necessary FMLA documentation from there.[7]

On June 12, Ibrahim returned to the United States with his father.[8]  Soon afterwards,

Ibrahim's father suffered complications associated with his heart condition and was scheduled for

surgery.[9]  Ibrahim obtained a letter from his father's doctor and submitted it to Mohamed and

Kanbar with an application for leave, but they again denied his request.[10]  This time, his CPAC

advisor suggested that he should resubmit his leave application to Mohamed in person and tell her

that CPAC had directed him to do so.[11]  Ibrahim followed the advice and got the leave he sought.[12]

When Ibrahim returned to work, having used only 65 of the 90 days' leave he was

permitted, Kanbar chastised him for taking so much leave.[13]  A year later, in October 2013,

Ibrahim took two days' leave to stay with his hospitalized daughter, and on his return Mohamed

reprimanded him for overusing his leave.[14]  Concerned about this hostility, Ibrahim asked the

---

[5] *See id.* at ¶ 9, 11.

[6] *See id.* at ¶ 12; 29 U.S.C. § 2601.

[7] *See* Docket No. 29 at ¶¶ 13-14.

[8] *See id.* at ¶ 16.

[9] *See id.* at ¶ 17.

[10] *See id.* at ¶¶ 17-18, 20.

[11] *See id.* at ¶ 21.

[12] *See id.*

[13] *See id.* at ¶ 22.

[14] *See id.* at ¶ 23.

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

Provost of DLI, Betty Leaver, to transfer him to another school, citing the denials of leave as well as lower performance evaluations that Kanbar and Mohamed had started giving him.[15]  While reviewing Ibrahim's application in January 2014, Leaver discovered that Mohamed apparently had modified Ibrahim's 2011 evaluation retroactively and without authorization, which affected Ibrahim's pay and eligibility for promotion.[16]  Ibrahim submitted another complaint about the falsification of records, this time to Deputy Inspector General Skip Johnson.[17]

Over the next few months, Mohamed's antagonism towards Ibrahim intensified.  In February alone, Mohamed accused Ibrahim of talking too much in his cubicle area, subjected him to additional and unnecessary teaching evaluations and made him sit at a desk opposite her own where she could observe him at all times.[18]  On March 18, Kanbar told Ibrahim that his performance had declined and that he would not receive a yearlong contract renewal, which Ibrahim interpreted as another threat of reprisal.[19]  Throughout this time, Ibrahim kept Leaver and Associate Provost Jielu Zhao apprised of the harassment, and they promised to investigate his complaints and work on transferring him elsewhere.[20]  Finally, on March 20, 2014, Ibrahim was transferred to a different school, and since then he has had no issues.[21]

Ibrahim made initial contact with DLI's Equal Employment Opportunity office on April 8, 2014, and discussed all his complaints, including improper denial of leave, retaliation for his lawful use of FMLA leave, falsification of performance reviews, retaliation in response to his

---

[15] *See id.* at ¶¶ 25-27, 29.

[16] *See id.* at ¶¶ 30-32.

[17] *See id.* at ¶ 33.

[18] *See id.* at ¶¶ 34-35, 37, 40, 43.

[19] *See id.* at ¶ 48.

[20] *See id.* at ¶¶ 36, 38-39, 41-43, 46-47.

[21] *See id.* at ¶¶ 49-50.

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

protected activity and discrimination in violation of Title VII of the Civil Rights Act of 1964.[22]
On June 10, an EEO officer dismissed Ibrahim's claim as untimely.[23]  On June 18, Ibrahim filed a
formal complaint with the Equal Employment Opportunity Commission, and on June 26 the
EEOC dismissed Ibrahim's complaint on the same basis.[24]  Meanwhile, the Inspector General
considered Ibrahim's allegations of record falsification and decided on July 28 to take no further
action.[25]

Ibrahim filed this action against the Secretary on January 23, 2015.[26]  His Second
Amended Complaint, which he filed on May 21, contains three causes of action: (1) violations of
the FMLA; (2) violations of the Whistleblower Protection Act of 1989[27] and (3) violations of Title
VII of the Civil Rights Act.[28]

## II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The parties further
consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and
Fed. R. Civ. P. 72(a).

## III.

A complaint must contain "a short and plain statement of the claim showing that the
pleader is entitled to relief."[29]  When a plaintiff fails to proffer "enough facts to state a claim to

---

[22] *See id.* at ¶ 56; 42 U.S.C. §§ 2000e to 2000e-17.

[23] *See* Docket No. 29 at ¶ 63.

[24] *See id.* at ¶¶ 64-68.

[25] *See id.* at ¶¶ 60-61, 69.

[26] *See* Docket No. 1.

[27] *See* 5 U.S.C. § 2302.

[28] *See* Docket No. 29 at ¶¶ 70-100.

[29] Fed. R. Civ. P. 8(a)(2).

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon

2  which relief may be granted.[30]  A claim is facially plausible "when the pleaded factual content

3  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4  alleged."[31]  Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable

5  legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[32]

6  Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint

7  could not be saved by amendment.[33]

8        At this stage of the case, the court must accept all material allegations in the complaint as

9  true and construe them in the light most favorable to the non-moving party.[34]  The court's review

10  is limited to the face of the complaint, materials incorporated into the complaint by reference and

11  matters of which the court may take judicial notice.[35]  Specifically, "[i]n determining the propriety

12  of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving

13  papers, such as a memorandum in opposition to a defendant's motion to dismiss."[36]  The court also

14  need not accept as true allegations that are conclusory, unwarranted deductions of fact or

15  unreasonable inferences.[37]

16        ***First***, Ibrahim has no private right of action under the FMLA, and his FMLA claims are

17

18  [30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19  [31] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

20  [32] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21  [33] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

22  [34] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

23  [35] *See id.*

24  [36] *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

25

26  [37] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*,
550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to
27  dismiss).

28

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

dismissed with prejudice.  "Title II of the FMLA governs leave for federal civil service employees with more than twelve months of service."[38]  Title II excludes, however, "any individual employed on a temporary or intermittent basis" or anyone who has not "completed at least 12 months of service as an employee."[39]  Federal employees who are not covered by Title II fall under Title I of the FMLA.[40]  Although "Title I and Title II employees are afforded equivalent rights to leave time," Title I provides for a private right of action, and Title II does not.[41]  In other words, if Ibrahim is a Title II employee, he cannot bring this suit.

Ibrahim argues that he falls within the exclusion for temporary or intermittent employees because he never entered into a contract longer than twelve months.  During the period at issue for his claims, his contract was renewed only for short intervals.[42]  Nevertheless, DLI continuously employed Ibrahim from 2008 through the present day, and he was eligible for benefits including accrued paid leave.[43]  Ibrahim cites *Hulett v. America's Finest Service Co.*, where a court in the Northern District of Ohio found that the plaintiff was a Title I employee.[44]  But, unlike Ibrahim, the plaintiff in *Hulett* worked for a contractor and never received salary or benefits directly from the federal government.[45]  Ibrahim was a federal employee under Title II of the FMLA, and Title II precludes this suit.

***Second***, Ibrahim failed to exhaust administrative remedies for his claims under WPA and

---

[38] *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999) (citing 5 U.S.C. § 6381-6387).

[39] 5 U.S.C. § 6381(1).

[40] *See Russell*, 191 F.3d at 1018; 29 U.S.C. § 2601-2654.

[41] *Russell*, 191 F.3d at 1018-19.

[42] *See* Docket No. 29 at ¶ 27.

[43] *See id.* at ¶¶ 4, 9.

[44] *See* Case No. 03-cv-2497, 2005 WL 2233261, at *2-5 (N.D. Ohio Sept. 14, 2005).

[45] *See id.* at *4-5.

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

the Civil Service Reform Act.[46]  The CSRA bars any employee with certain supervisory powers from "discriminat[ing] for or against any employee or applicant for employment . . . on the basis of race, color, religion, sex, or national origin."[47]  As modified by the WPA, the statute further provides that supervisory employees may not "take or fail to take, or threaten to take or fail to take, a personnel action" against an employee because of the employee's disclosure of improper behavior or because of the employee's exercise of any appeal, complaint or grievance right.[48]  The prohibited retaliatory personnel actions include "reemployment," "performance evaluation[s]," "decision[s] concerning pay, benefits, or awards" and "any other significant change in duties, responsibilities, or working conditions."[49]

In most cases, an employee complaining of one of these prohibited personnel actions must first "seek corrective action from the [Office of] Special Counsel."[50]  Only if OSC does not address the employee's grievance may he file a complaint with the Merit Systems Protection Board.[51]  But if the employee alleges one of several particularly serious personnel actions,[52] he may appeal the action directly to the MSPB without proceeding through OSC.[53]  In any case, a

---

[46]  Congress enacted the WPA in 1989 to build on the existing CSRA regulatory scheme.  *See Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1130 (9th Cir. 2002), *abrogated on other grounds by Millbrook v. United States*, 133 S. Ct. 1441 (2013).

[47] 5 U.S.C. § 2302(b)(1).

[48] *Id.* § 2302(b)(8)-(9).

[49] *Id.* § 2302(a)(2)(A).

[50] *Id.* § 1214(a)(3).

[51] *See id.*; *id.* § 1221(a).

[52] *See id.* § 7512 (defining these serious personnel actions to include "removal," "suspension for more than 14 days," "reduction in grade," "reduction in pay" and "furlough of 30 days or less").

[53] *See id.* § 1214(a)(3); *id.* § 7513(d); *id.* § 7701; *Kloeckner v. Solis*, 133 S. Ct. 597, 601 (2012) ("If (but only if) the action is particularly serious . . . the affected employee has a right to appeal the agency's decision to the MSPB, an independent adjudicator of federal employment disputes.").

7

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  court generally cannot review a CSRA or WPA claim until the MSPB has issued a final decision

2  on the claim.[54]

3        There is, however, one exception to the rule that complaints must go through the MSPB.

4  "When an employee complains of a personnel action serious enough to appeal to the MSPB *and*

5  alleges that the action was based on discrimination, she is said (by pertinent regulation) to have

6  brought a 'mixed case.'"[55]   A federal employee asserting a mixed case claim may bypass the OSC

7  and MSPB process and file a complaint directly with the agency itself through its EEO office.[56]   If

8  the agency finds against the employee, she may appeal that decision either to the MSPB or directly

9  to a district court.[57]

10        Because Ibrahim pursued his claim through his EEO office instead of OSC or the MSPB,

11  he has exhausted his administrative remedies only if his claim presents a mixed case.  But Ibrahim

12  does not meet the requirements for a mixed case because he fails to allege a "personnel action

13  serious enough to appeal to the MSPB."[58]   The closest he comes is claiming that the lower

14  performance reviews led to lower pay than he otherwise might have received, but his allegation is

15  not specific enough to constitute "a reduction in pay" within the meaning of 5 U.S.C. § 7512.[59]

16

17  [54] *See* 5 U.S.C. § 1214(c)(1); *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) ("Under no
     circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower

18  cause of action brought directly before it in the first instance.").

19  [55] *Kloeckner*, 133 S. Ct. at 601 (citing 29 C.F.R. § 1614.302).

20  [56] *See* 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b); *Kloeckner*, 133 S. Ct. at 601; *Sloan v.*

21  *West*, 140 F.3d 1255, 1259-60 (9th Cir. 1998); *see also Butler v. West*, 164 F.3d 634, 638 (D.C.
     Cir. 1999); *Ardalan v. McHugh*, Case No. 13-cv-1138, 2013 WL 6212710, at *15 (N.D. Cal. Nov.

22  27, 2013).

23  [57] *See* 5 U.S.C. § 7703(b)(2); 5 C.F.R. § 1201.154(b); 29 C.F.R. § 1614.302(d)(1)(i); *Kloeckner*,
     133 S. Ct. at 601; *Sloan*, 140 F.3d at 1259-60; *Ardalan*, 2013 WL 6212710, at *15.

24

25  [58] *Kloeckner*, 133 S. Ct. at 601.

26  [59] *See Chaney v. Veterans Admin.*, 906 F.2d 697, 698 (Fed. Cir. 1990) (holding that "a reduction in
     pay . . . arises only when an ascertainable lowering, at the time of the personnel action, of an

27  employee's present or future pay occurs").

28

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

Moreover, if Ibrahim had pled a mixed case, the applicable regulations required him to "fil[e] an EEO complaint within 45 days of the effective date of the personnel action."[60]  Almost all of the personnel actions at issue—and in particular the performance reviews that possibly reduced his pay—occurred more than 45 days before Ibrahim contacted his EEO office.[61]  Ibrahim cites the CSRA's savings clause, but that only excuses errors in the place of filing, not the time.[62]  Because Ibrahim did not submit his WPA claims to his EEO office within that 45-day period, those claims cannot be saved.

*Third*, Ibrahim's Title VII claims also must be dismissed, either because he failed to raise his allegations in time or because he failed to exhaust administrative remedies.  "[T]o establish a prima facie case of discrimination, a plaintiff must show (1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."[63]  A plaintiff in an employment discrimination case need not allege specific facts to make out a prima facie case of discrimination.[64]  Before an aggrieved federal employee files suit in district court, however, he must first "seek relief in the agency that has allegedly discriminated against him."[65]  As mentioned above, the employee must "initiate contact with a [EEO] Counselor within 45 days

---

[60] *Sloan*, 140 F.3d at 1262; *see* 29 C.F.R. § 1614.105(a).

[61] Ibrahim argues that his communication with Leaver in late December 2014 constituted EEO contact.  Even assuming that it did, Ibrahim fails to allege the date of any personnel action that could underlie a mixed case.

[62] *See* 5 U.S.C. § 7702(f) (specifying that the employee still must "timely file[]" her complaint); *Schlottman v. Solis*, 845 F. Supp. 2d 107, 111 (D.D.C. 2012) ("Here, even assuming that plaintiff filed a mixed case appeal with the MSPB, the savings provision does not apply because it requires that the mixed case appeal be timely filed.").

[63] *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

[64] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 515 (2002).

[65] *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 823 (1976)).

9

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

of the date of [each] matter alleged to be discriminatory."[66]  "Each discrete discriminatory act starts a new clock for filing charges alleging that act,"[67] unless the plaintiff raises a hostile work environment claim.[68]  The Ninth Circuit has followed the EEOC's interpretation of its own regulations and held that "a complainant may satisfy the criterion of EEO Counselor contact by initiating contact with *any agency official logically connected with the EEO process,* even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process."[69]

The alleged misconduct occurred between May 2012 and February 2014, but Ibrahim did not contact Leaver until December 2013[70] or his EEO counselor until April 8, 2014.  As a result, Ibrahim failed to make contact with an EEO official within 45 days of the majority of the allegedly discriminatory actions, including the denials of leave, the reprimands each time he returned from leave and the lowered performance reviews.  As for the remaining allegations, even if Ibrahim did mention them during his meeting with EEO counselors,[71] he did not raise them in his written communications with his EEO counselor or in his formal complaint.[72]  By doing so, he effectively declined to pursue these allegations, and his initial verbal complaints were not enough "to constitute substantial compliance with the claim presentment requirements."[73]  Ibrahim

---

[66] 29 C.F.R. § 1614.105(a)(1).

[67] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

[68] *See id.* at 115-18.

[69] *Kraus*, 572 F.3d at 1044 (internal quotation marks omitted).

[70] Ibrahim argues that his communications with Leaver constituted contact with an EEO counselor under *Kraus*.  *See id.*  Even if it did, it does not change the result.

[71] *See* Docket No. 29 at ¶¶ 59-60.

[72] *See* Docket No. 1-6.  The court takes judicial notice of these documents, which Ibrahim attached to his initial complaint but not to the operative complaint.  The court may do so because their authenticity is not contested and Ibrahim's Second Amended Complaint relies on them to establish that he exhausted his administrative remedies.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); Docket No. 29 at ¶¶ 56-60, 62-68.

[73] *Sommatino v. United States*, 255 F.3d 704, 709 (9th Cir. 2001).

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   therefore did not exhaust his administrative remedies within the EEO process, and the court lacks

2   subject matter jurisdiction over those claims in the current action.[74]

3       Defendants' motion to dismiss is GRANTED.  Dismissal without leave to amend is only

4   appropriate if it is clear that the complaint could not be saved by amendment such as after a

5   plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[75]  Because

6   the court is not yet certain that further amendment is futile with respect to Ibrahim's WPA and

7   Title VII claims, limited leave to amend only these claims also is GRANTED.  Any amended

8   complaint shall be filed within 21 days of this order.

9   **SO ORDERED.**

10  Dated: November 18, 2015

11  PAUL S. GREWAL
    United States Magistrate Judge

---

[74] *See id.*  In his opposition to the motion to dismiss, Ibrahim raises several new factual allegations
for the first time.  The court may not and does not consider these allegations now.  *See Schneider*,
151 F.3d at 1197 n.1.

[75] *See Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Case No. 15-cv-00336-PSG
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California